IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:22-cv-00055

| | |
|---|---|
| SHAWN CONDON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMANDED** |
| SANDERSON FARMS, INC., ) | |
| ) | |
| Defendant. ) | |

COMES NOW Plaintiff Shawn Condon ("Mr. Condon"), complaining of Defendant Sanderson Farms, Inc. ("Defendant"), alleges and says the following:

## INTRODUCTION

1. This lawsuit seeks to hold Defendant accountable for its retaliation against Mr. Condon for his refusal to discriminate against African American employees and for his request for accommodations under the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA").

## JURISDICTION

2. Mr. Condon is a resident of Lenoir County, North Carolina and is neither a minor nor incompetent.

3. Defendant is a foreign company with its principal place of business in Laurel, Mississippi.

4. Defendant regularly and systematically conducts business in the State of North Carolina.

5. Defendant employed more than 15 employees for each working day in more than 20 weeks during the preceding year.

6. At all times relevant to this Complaint, Defendant was an "employer" as the term is defined in Title VII, the ADA, and FMLA.

1

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331, as this action arises out of 42 U.S.C. §§ 12101 *et seq.*, 42 U.S.C. §§ 2000e *et seq.*, and 29 U.S.C. §§ 2601 *et seq.*

8. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

9. This Court has personal jurisdiction over Defendant because Defendant conducts business in the State of North Carolina.

10. Venue is proper pursuant to 28 U.S.C. § 1931 as to Defendant because Defendant conducts business in this judicial district. Venue is also proper because this district is where a substantial part of the events giving rise to the claims occurred.

## ADMINISTRATIVE HISTORY

11. Mr. Condon has exhausted all administrative remedies available to him.

12. On August 31, 2021, Mr. Condon filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy of the August 31, 2021 EEOC Charge is attached hereto as Exhibit A.

13. The EEOC issued a "Dismissal and Notice of Rights" on April 16, 2022. A copy of the April 16, 2022 Dismissal and Notice of Rights letter is attached hereto as Exhibit B.

14. This Complaint is timely filed within 90 days from the date Mr. Condon received the Dismissal and Notice of Rights from the EEOC.

## FACTS

*Mr. Condon begins employment with Defendant*

15. On or about January 16, 2017, Defendant hired Mr. Condon as an Organization Development Manager in Laurel, Mississippi.

2

Case 4:22-cv-00055-D   Document 1   Filed 05/26/22   Page 2 of 13

16. During the first two years of his employment, Mr. Condon received all favorable performance reviews from his supervisor, Jamie Peoples.

17. Due to his strong performance, Mr. Condon received the maximum merit salary increase for both of his first two years employed by the company.

18. At no time prior to May 2020 did Mr. Condon ever receive a disciplinary action from Defendant.

19. In fact, prior to May 2020, Mr. Condon had never received a disciplinary action of any kind from any of his employers.

20. In February 2019, Mr. Condon was approached by Casey Butts, Defendant's Corporate Processing Manager, to gauge his interest in working at Defendant's Kinston Processing Plant in Kinston, North Carolina.

21. Mr. Butts indicated that Mr. Condon would be a good candidate for that role as evidenced by Mr. Condon's excellent performance history for Defendant.

22. Mr. Butts further expressed that the Kinston Processing Plant had been experiencing significant performance issues and could use someone of Mr. Condon's caliber in management.

*Mr. Condon excels at Kinston Processing Plant*

23. Mr. Condon accepted the transfer to the Kinston Processing Plant and began work at the facility on or about April 1, 2019.

24. Mr. Condon's new position at the Kinston Processing Plant was Advanced Trainee II, which was a management level role that required him to assist throughout the facility.

25. From approximately April 1, 2019 to September 1, 2019, Mr. Condon split time between Human Resources and Clean-Up departments of the facility.

26. Throughout his time as Advanced Trainee II, Mr. Condon received positive feedback and praise from his immediate supervisor, Victor Holloway, as well as Mr. Butts.

27. In September 2019, Defendant transferred Mr. Condon to the Third Processing section of the Kinston facility.

28. At some time in November 2019, a Third Processing superintendent was severely injured and could not continue working.

29. Faced with this crucial vacancy, Third Processing Manager Dewayne Parker and Plant Manager Austen Demott asked that Mr. Condon transfer to fill the urgent need.

30. Mr. Condon agreed to the transfer and, accordingly, began as Third Processing Superintendent in November 2019.

31. In his role as Third Processing Superintendent, Mr. Condon reported directly to Dewayne Parker.

32. At the end of December 2019, Mr. Condon received his first full annual performance evaluation while working at the Kinston facility. That evaluation recognized Mr. Condon for his management skills, work ethic, and adaptability to his new roles.

33. Mr. Condon's December 2019 evaluation did not contain any concerns, reprimands, or disciplinary actions.

*Mr. Condon experiences significant health issues*

34. In February 2020, Mr. Condon began experiencing severe migraines, dizziness, and stomach issues.

35. Ultimately, those symptoms were attributed to a cyst on Mr. Condon's brain.

36. Mr. Condon requested time off to treat this condition.

37. Mr. Parker and Mr. Demott, however, told Mr. Condon that he would have to "suck it up" and continue to come to work.

38. Without this required time off, Mr. Condon's condition worsened.

### *Mr. Condon ordered to discipline African Americans under false pretenses*

39. Beginning in April 2020, Defendant's management began putting pressure on the Kinston facility leadership to improve its Shipping Department.

40. As part of this pressure, Kinston management was required to participate in a weekly conference call with Defendant's Chief Executive Officer Joe Sanderson and Defendant's President Lampkin Butts.

41. Because of Joe Sanderson's involvement in these weekly conference calls, they quickly became known as "Joe Reports."

42. During the Joe Reports, Kinston management was expected to provide information on any problems at the plant, including identifying who was responsible for the problems in the first place.

43. Oftentimes, though, the problems discussed were the result of systemic problems or equipment issues. Other times, issues arose where an employee could have been responsible, but it was not possible to determine which employee may have been at fault.

44. Kinston management found, however, that Defendant's upper management did not understand the more complicated explanations and instead preferred when Kinston would blame individual employees for the problems.

45. In May 2020, Kinston management, including Mr. Parker and Mr. Demott, began demanding Mr. Condon falsely write up African American employees for issues identified in the Joe Reports, but for which they were not responsible.

46. Mr. Condon refused to do so on the basis that it was unethical, prejudicial, and illegal and reported his concerns to his supervisor.

*Defendant starts to retaliate against Mr. Condon*

47. Within days of Mr. Condon's refusal, Defendant's management began a campaign of retaliation against him.

48. On May 13, 2020, Mr. Condon received a written reprimand titled a "Memorandum of Understanding" from Mr. Parker.

49. The May 13th Memorandum stated a number of items which were false on their face.

50. Mr. Parker told Mr. Condon that he knew that the information in the Memorandum was false, but that Mr. Demott had ordered him to hold Mr. Condon responsible.

51. In fact, Mr. Demott told Mr. Parker in a May 20th email that "[Mr. Condon] is officially on my radar" because of these issues.

52. In June 2020, Defendant demoted Mr. Condon to the role of Supervisor.

53. Mr. Parker told Mr. Condon that the demotion was done on Mr. Demott's order.

*Mr. Condon requires FMLA leave*

54. On July 30, 2020, Mr. Condon's brain cyst caused him to become severely ill while working for Defendant.

55. On that day, the nurse on duty at the Kinston facility ordered Mr. Condon home and he was subsequently placed on FMLA leave.

56. Mr. Condon remained on FMLA leave until December 3, 2020 when he was released to return to work.

## Mr. Condon is demoted and discharged

57. Upon his return to work, Mr. Condon was demoted to a temporary position in the Human Resources Department.

58. After working a month in this new position, Mr. Condon received an annual performance evaluation by Division Manager Jared Lowe.

59. Mr. Lowe gave Mr. Condon an "Unsatisfactory" performance evaluation.

60. Mr. Lowe's evaluation did not provide specific reasons for the "Unsatisfactory" rating, only that Mr. Condon had been reprimanded earlier in the year.

61. Defendant's personnel policies stated that such performance evaluations were to include specific performance goals for the coming year.

62. Mr. Lowe stated that Mr. Condon would be re-evaluated in six months but did not identify any performance goals as required by Defendant's policies.

63. Following this performance evaluation, Mr. Condon repeatedly requested that Defendant identify these specific performance goals.

64. Defendant denied each of these requests, as Defendant had already decided to fire Mr. Condon in retaliation for his disability, FMLA leave, and/or his refusal to engage in racially discriminatory conduct.

65. Mr. Condon continued working in his reduced role with Defendant throughout early 2021. Throughout this time, Mr. Condon performed his assigned tasks and met all reasonable expectations of him.

66. On April 6, 2021, Mr. Condon's new supervisor, Ashley Hand, issued him a written reprimand based on demonstrably false information.

67. Defendant's personnel policy states that any employee with an "Unsatisfactory" performance review cannot have any performance issues at all prior to his six-month re-evaluation. Any such employee will be fired.

68. Mr. Condon's April 6th reprimand constituted "poor performance" under Defendant's personnel policy.

69. Faced with Defendant's policy requiring the termination of his employment, Mr. Condon submitted a letter on April 21, 2021 stating that he considered himself to be "constructively discharged" due to the adverse actions taken against him in retaliation for his FMLA and his refusal to engage in racial discrimination.

### FIRST CAUSE OF ACTION – RETALIATION IN VIOLATION OF TITLE VII
### 42 U.S.C. §§ 2000e *et seq*.

70. Mr. Condon hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

71. Title VII prohibits retaliation against employees who oppose discrimination prohibited by the statute.

72. Mr. Condon engaged in protected activity within the meaning of Title VII by refusing to falsify the employment records of his African American colleagues and by complaining to his supervisor about the illegal and discriminatory practice.

73. At the time of his protected activity, Mr. Condon was meeting all of his job expectations.

74. Mr. Condon was demoted, disciplined, and ultimately discharged from his position with Defendant in retaliation for his protected activity.

75. As a direct and proximate result of Defendant's retaliation, Mr. Condon suffered and continues to suffer economic losses, pain and suffering, and other nonpecuniary losses.

76. Defendant's actions were intentional, willful, and done in reckless disregard of Mr. Condon's rights as protected by Title VII.

77. Accordingly, Mr. Condon is entitled to recover punitive damages from Defendant.

78. Mr. Condon is entitled to recover his reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION – DISABILITY DISCRIMINATION
### 42 U.S.C. §§ 12101 *et seq.*

79. Mr. Condon hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

80. At all times relevant to this action, Mr. Condon was a qualified individual with a disability.

81. Defendant demoted, disciplined, and ultimately discharged Mr. Condon from his employment because of his disability.

82. Mr. Condon was fulfilling all of Defendant's legitimate expectations at the time he was fired.

83. The circumstances of Defendant's adverse employment actions towards Mr. Condon give rise to a reasonable inference of unlawful discrimination.

84. As a direct and proximate result of Defendant's discriminatory conduct, Mr. Condon suffered and continues to suffer economic and other nonpecuniary losses.

85. Defendant's actions were intentional, willful, and done in reckless disregard of Mr. Condon's rights as protected by the ADA.

86. Accordingly, Mr. Condon is entitled to recover punitive damages from Defendant.

87. Further, Mr. Condon is entitled to recover his reasonable attorney's fees and costs.

## THIRD CAUSE OF ACTION – FMLA RETALIATION
### 29 U.S.C. §§ 2601 *et seq.*

88. Mr. Condon hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

89. Mr. Condon had worked for Defendant for at least 12 months at the time he was demoted and subsequently discharged from his employment.

90. Mr. Condon had worked at least 1,250 hours in the 12 months prior to when he was demoted and subsequently discharged from his employment.

91. Mr. Condon worked at a location where there were 50 or more employees within a 75-mile radius.

92. Mr. Condon engaged in a protected activity when he requested and received medical leave from August 2020 through December 3, 2020.

93. Mr. Condon was subject to an adverse employment action in retaliation for his request for medical leave by his demotion, disciplinary action, and his subsequent discharge from employment.

94. Defendant's actions were intentional, willful, and done in reckless disregard of Mr. Condon's rights as protected by the FMLA.

95. Accordingly, Mr. Condon is entitled to recover liquidated damages from Defendant pursuant to 29 U.S.C. 2617(a).

96. As a direct and proximate result of Defendant's conduct, Mr. Condon suffered and continues to suffer economic and other nonpecuniary losses.

97. Further, Mr. Condon is entitled to recover his reasonable attorney's fees and costs.

## FOURTH CAUSE OF ACTION – ADA RETALIATION
**42 U.S.C. §§ 12101 *et seq.***

98. Mr. Condon hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

99. The ADA prohibits retaliation against employees who oppose discrimination prohibited by the statute.

100. Mr. Condon engaged in a protected activity within the meaning of the ADA by requesting an accommodation for his disability.

101. Mr. Condon was subject to an adverse employment action in retaliation for his request for accommodation by his demotion, disciplinary action, and his subsequent discharge from employment.

102. As a direct and proximate result of Defendant's discriminatory conduct, Mr. Condon suffered and continues to suffer economic and other nonpecuniary losses.

103. Defendant's actions were intentional, willful, and done in reckless disregard of Mr. Condon's rights as protected by the ADA.

104. Accordingly, Mr. Condon is entitled to recover punitive damages from Defendant.

105. Further, Mr. Condon is entitled to recover his reasonable attorney's fees and costs.

## FIFTH CAUSE OF ACTION – FMLA INTERFERENCE
### 29 U.S.C. §§ 2601 *et seq.*

106. Mr. Condon hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

107. Mr. Condon had worked for Defendant for at least 12 months at the time he was demoted and subsequently discharged from his employment.

108. Mr. Condon had worked at least 1,250 hours in the 12 months prior to when he was demoted and subsequently discharged from his employment.

109. Mr. Condon worked at a location where there were 50 or more employees within a 75-mile radius.

110. Mr. Condon provided notice of his intent to take protected leave.

111. Defendant denied Mr. Condon FMLA benefits to which he was entitled.

112. Defendant's actions were intentional, willful, and done in reckless disregard of Mr. Condon's rights as protected by the FMLA.

113. Accordingly, Mr. Condon is entitled to recover liquidated damages from Defendant pursuant to 29 U.S.C. 2617(a).

114. As a direct and proximate result of Defendant's conduct, Mr. Condon suffered and continues to suffer economic and other nonpecuniary losses.

115. Further, Mr. Condon is entitled to recover his reasonable attorney's fees and costs.

## SIXTH CAUSE OF ACTION – WRONGFUL DISCHARGE

116. Mr. Condon hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

117. The termination of Mr. Condon's employment was done in violation of the public policy of the State of North Carolina.

118. Mr. Condon is entitled to recover from Defendant his compensatory damages as provided by North Carolina law, including, but not limited to, back pay, front pay, benefits of employment, inconvenience, loss of enjoyment of life, and humiliation.

119. Defendant's conduct as set forth herein was malicious and/or willful and wanton, thereby justifying an award of punitive damages.

120. Mr. Condon is entitled to recover his reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby requests the following relief:

1. Payment for all economic damages in an amount to be proved at trial;

2. Payment of liquidated damages pursuant to 29 U.S.C. 2617;

3. Payment for punitive damages in an amount to be determined by the jury;

4. Payment of reasonable attorneys' fees and costs;

5. Recovery for pre-judgment and post-judgment interest on all amounts awarded herein; and

6. All other relief which this Honorable Court deems just and proper.

This the 26th day of May, 2022.

                              OSBORN GAMBALE BECKLEY & BUDD PLLC

                    BY:    /s/ Joseph D. Budd
                              JOSEPH D. BUDD
                              N.C. Bar No. 44263
                              721 W. Morgan St.
                              Raleigh, North Carolina 27603
                              joe@counselcarolina.com
                              919.373.6422
                              Facsimile: 919.578.3733